MIDDLESEX COUNTY ORPHANS COURT.

IN THE MATTER OF THE ESTATE OF PETER FISHER, DECEASED.

For the trustees and accountants, *Warren R. Schenck.*

For the exceptant, *Cantillo & Scuorzo (Carl Abruzzese,* of counsel).

For Louella F. Dunlap, *Clifford I. Voorhees.*

For the National Bank of New Jersey, trustee, *William E. Florance.*

KIRKPATRICK, J. Peter Fisher died June 30th, 1906, testate. His will and codicils probated July 11th, 1906, in Middlesex county surrogate's office, and recorded in Book V of Wills, pages 414, &c., among other things provides as follows:

"*Second.* I give, devise and bequeath to my executors hereinafter named all my real estate and also all my personal estate [excepting such parts thereof as are hereinafter specifically devised and bequeath] including such shares of stock in 'The Sayre and Fisher Company' as I may own, or be entitled to, at the time of my decease; to have and to hold all and singular the said real and personal estate [with the exception aforesaid] to my said executors and trustees, and to the survivors and survivor of them, in trust nevertheless, and for and upon the following trusts, viz.:

"That my said executors and trustees and the survivors and survivor of them, shall hold such real and personal estate as aforesaid and also such shares of stock in 'The Sayre and Fisher Company' as I may own, or may be entiled to at the time of my decease and such additional shares of stock as may thereafter be issued by the said company, and vote on the said shares of stock, for directors and officers of the said company, and otherwise, as according to the best judgment of my said executors and trustees the welfare of my estate may require; and also to receive such dividends as may, from time to time, be declared on the said stock and other income from my said estate, and pay such dividends, and all other income from my said real and personal estate, after first deducting taxes and other yearly charges and expenses upon my said real and personal estate, to the persons, at the times, for the periods, and in the manner hereinafter particularly specified and directed, and to convey, transfer and dispose of the said real and personal estate in such manner as is hereafter directed."

"*Fourteenth.* I hereby authorize and empower my executors, the survivors and survivor of them, to sell the whole or any part of my real and personal estate; not herein specifically devised or bequeathed, including my said stock, at either public or private sale, at any time after my decease, and to execute and give good and sufficient deeds and transfers therefor to the purchaser or purchasers thereof. The proceeds derived by my executors and trustees from the sale by them of any of my real or personal estate, or the accumu-

lation therefrom, not herein otherwise disposed of, shall be invested and reinvested from time to time by my executors and trustees, the survivors and survivor of them, on good, reliable first-lien security, subject to the trusts hereinabove declared, and the interest and income thereof and therefrom, as well as the principal moneys thereof, shall be paid and disposed of by my executors and trustees the survivors and survivor of them, to the persons, at the times, upon the events, and in the manner hereinabove directed."

Other paragaphs of the will provide for distribution among his widow and children and are not pertinent to the present litigation, except the provisions for the benefit of Richard B. Fisher, the present exceptant, which briefly provide for the payment of the income of his share to him for his lifetime with remainder over to certain other persons. This paragraph is typical of the provisions generally for his children.

He left a substantial estate including among other things, eight hundred shares of the capital stock of the Sayre and Fisher Company, thirty-two shares of the capital stock of the Sayreville Electric Light and Power Company and four hundred and forty shares of the capital stock of the Sayre and Fisher Land Company. Of the above shares of stock one-eighth passed from the executors to E. A. Fisher under the terms of the will, and the other seven-eighths passed to the trustees named in said will to be administered by them in accord with the directions contained in said will.

Between 1906 and 1913 the trustees received an additional three hundred and fifty shares of stock designated in their account filed in 1913 as "new stock." This apparently represented a stock dividend of fifty per cent. on the seven hundred shares of stock held by said trustees. This additional three hundred and fifty shares of stock of the Sayre and Fisher Company was treated by the trustees as an addition to *corpus* and so shown in each of the various accountings filed from time to time by them.

There has been from time to time distributions of the stock (*corpus*) as life tenants have died and remaindermen became entitled to final possession of their respective shares.

Recently all the stockholders of Sayre and Fisher Company and the other two companies above mentioned joined in a sale of all the stock of said companies to one Clark. The price realized by said sale was many times the inventoried value placed on said stock by the executors and trustees at the beginning of the trust estate and during the course thereof.

The trustees have filed an intermediate accounting treating the amount realized by them from the sale of the stock so held by them as *corpus,* and retaining it as such. One of the life beneficiaries, Richard B. Fisher, excepts to the account and claims to be entitled under testator's will to so much of the sale price as represents the enhancement of value due to accumulated and undistributed earnings on the stock held for his benefit. He has also presented a petition praying to have prior accounts reopened and restated to the end that the "new stock" received prior to 1913 by way of stock dividend may be apportioned between the life tenants and remaindermen.

"Where shares of stock in corporations are held by trustees extraordinary dividends, either in cash or otherwise, declared and paid thereon, should generally be apportioned between life beneficiary and remainderman." *Lang* v. *Lang,* 56 *N. J. Eq.* 603; *Day* v. *Faulks, 79 Id.* 66, and other cases.

Under this principle of law the exceptant would appear to be entitled to have the extraordinary dividend apportioned between him and the remainderman, but counsel for the trustees argues that a proper construction of the will shows an intention on the part of the testator that all extraordinary dividends of stock should be held by the trustees as *corpus.*

In support of this argument he points out the language of those parts of the will particularly quoted above.

"The Orphans Court has been given statutory jurisdiction to construe wills for the purpose of decreeing distribution according to its direction and provisions." *Pamph. L.* 1898, *p.* 781, as amended *Pamph. L.* 1915, *p.* 343, cited in *In re Morrissee's Estate,* 91 *N. J. Eq.* 478.

The constitutionality of this statute has been frequently mooted but, as far as I know, never decided. I therefore accept it as conferring on the Orphans Court authority to construe the will of Mr. Fisher in so far as distribution of the estate left by him is therein provided for.

It seems to me a proper reading of those parts of the will of Mr. Fisher pertinent to the problem before us leaves no doubt as to his intentions. The first duty of a court in construing a will is to ascertain, if possible, from the will the testator's intent and to follow that intent in construing the document. The very evident intent of testator was to place all of his estate in the hands of trustees (excepting, of course, such property as was given outright to certain beneficiaries), giving to certain of his children only the income from their shares during life. It is conceded such was his intent and such the effect of his will as to all the property of which he died seized or entitled to. The court feels the will goes further and also places in trust in the hands of the trustees such additional property by way of accumulations or enhancement of value, as might come to the trustees upon the original property and that any stock dividend or sum received in excess of inventory value upon the sale of any shares of stock or other property should be added to *corpus*.

Since I have arrived at this construction of Mr. Fisher's will it becomes unnecessary to consider the very interesting questions of the respective rights of life beneficiaries and remaindermen in extraordinary dividends upon or enhanced value of shares of stock, arsing by reason of earnings accumulated during the trust period.

The exceptions filed also contained an objection that the trustees charged themselves only with the net amount received from the sale of the shares of stock held by them and failed to disclose the amount of expenses, commissions and legal fees paid in connection with the sale.

Very little argument was made on this objection and it appears to be without substantial merit. The proof shows that the purchase price of all the stock was paid under the agreement to two individuals acting as agents for all the

stockholders. These agents paid the expenses and then paid each stockholder, including the trustees of Peter Fisher, the net amount to which each was entitled. Thus the amount with which the trustees charge themselves is the amount actually received by them, and the account is proper as to charge and discharge. If exceptant feels he is aggrieved by the terms of the original contract or by the amounts paid thereunder for expenses he may file exception in proper form or amend the present exception upon proper application therefor.